# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**SHAWANDA NEVERS**                                   **CIVIL ACTION NO.**

**VERSUS**                                                          **20-485-BAJ-EWD**

**DEPARTMENT OF PUBLIC SAFETY**
**AND CORRECTIONS, ET AL.**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on June 15, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**SHAWANDA NEVERS**                                    **CIVIL ACTION NO.**

**VERSUS**                                                        **20-485-BAJ-EWD**

**DEPARTMENT OF PUBLIC SAFETY
AND CORRECTIONS, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Complaint, as amended, of Shawanda Nevers ("Plaintiff"), who is representing herself.[1]  In addition to the Complaints, the Court further developed the facts of this case through a *Spears* hearing held on October 16, 2020.[2]  Based on the screening process for such actions, it is recommended that all claims be dismissed with prejudice as legally frivolous and for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e) and 1915A, with the exception of Plaintiff's claim for failure to protect against Lashawnda Burks, Deputy Warden LeBlanc, Warden Boutte, Colonel Brown, Jackson, and Assistant Warden Pedascleaux.

I.    **BACKGROUND**

Plaintiff filed this suit against several Defendants[3] under 42 U.S.C. § 1983 alleging that Defendants have violated her constitutional rights during her incarceration at Louisiana Correctional Institute for Women ("LCIW").[4]  Plaintiff seeks monetary and injunctive relief.[5]

---

[1] R. Docs. 1 & 15.
[2] R. Docs. 6, 10, 11, & 13.
[3] The named Defendants include James LeBlanc, Rhett Covington, Warden Frederick M. Boutte, Deputy Warden Morgan LeBlanc, Assistant Warden Freddie J. Jackson, Assistant Warden LaShawnda Burks, Assistant Warden Pedascleaux, Colonel Brown, Major Jenkins, Captain John-Johnson, Lieutenant LaWanda Williams, Lieutenant Roberson, Sergeant Smith, Ashley Miles, Ms. Hutchinson, Major White, Captain Murphy, Mr. Coleman, Ms. Kaylin Templet-Dedon, Assistant Warden Jordan, Debbie Rutledge, and Sergeant Moody.  R. Docs. 1, p. 1 & 15, pp. 1-2.  The Defendants are listed as they are named in the Complaint and amended Complaint.  The Court notes that some first names are unknown and that LaWanda Williams is listed in the original Complaint but not in the amended Complaint, and Sergeant Moody is not listed in the original Complaint but is listed in the amended Complaint.  Both are treated as named Defendants for purposes of screening.
[4] R. Doc. 1.
[5] R. Doc. 1, pp. 33-34; R. Doc 15, p. 2.

## II.    Law & Analysis

### A.  Standard of Review

Pursuant to 28 U.S.C. §§ 1915(e) and 1915A, this Court is authorized to dismiss an action by a plaintiff who has been granted IFP status if the action or claim is frivolous, malicious, or fails to state a claim upon which relief may be granted.[6]  The statutes impose similar standards for dismissal and are intended to afford the court the ability to separate those claims that may have merit from those that lack a basis in law or in fact.  Dismissal may be made before service of process or before any defendant has answered if the court determines that the claim or action does not pass the screening process.

To determine whether a complaint fails to state a claim under §§ 1915(e) and 1915A, courts apply the same standard used for dismissal under Fed. R. Civ. Proc. 12(b)(6).[7]  Accordingly, the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.[8]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[9]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]  For a complaint to survive

---

[6] §1915(e) provides for dismissal of lawsuits that are frivolous, malicious, or fail to state a claim in proceedings where the plaintiff was granted leave to proceed *in forma pauperis* ("IFP"); §1915A provides for dismissal of lawsuits by prisoners against a governmental entity or employee of a governmental entity that are frivolous, malicious, or fail to state a claim upon which relief may be granted regardless of the pauper status of the plaintiff.  Plaintiff was granted permission to proceed *in forma pauperis* on August 28, 2020, so both statutes apply.  R. Doc. 5.
[7] *Bazrowx v. Scott,* 136 F.3d 1053, 1054 (5th Cir. 1998) (recognizing that the standards for determining whether a complaint fails to state a claim for relief are the same under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A and Fed. R. Civ. P. 12(b)(6).
[8] *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996).
[9] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).
[10] *Id.*

dismissal, it "must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim."[11]

While the screening process does give the court the rare power to 'pierce the veil' of the factual allegations,[12] pleaded facts that are merely improbable or strange are not frivolous for purposes of screening.[13] A claim is factually frivolous only if the alleged facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'"[14]   A claim is also subject to dismissal if it has no legal basis, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."[15]

### B. Numerous Defendants are Subject to Dismissal for Lack of Personal Involvement

Supervisory officials may be held liable under § 1983 only if they affirmatively participate in acts that cause constitutional deprivation or implement unconstitutional policies that cause the plaintiff's injury.[16]   An allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983.[17]   Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred because a subordinate implemented the supervisor's affirmative wrongful policies or as a result of a breach

---

[11] *AGEM Management Services, LLC v. First Tennessee Bank Nat. Ass'n*, 942 F.Supp.2d 611, 617 (E.D. La. April 25, 2013), citing *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 255-57 (5th Cir. 2009).

[12] *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

[13] *Id.* at 33; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992).

[14] *Denton*, 504 U.S. at 33, (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).

[15] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998).

[16] *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).

[17] *See Iqbal*, 556 U.S. at 676 (2009), citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").

by the supervisor of an affirmative duty specially imposed by state law.[18]  The policy implemented

by the supervisor must be so deficient as to be a denial of constitutional rights.[19]

### i.    No Personal Involvement

Plaintiff has named Rhett Covington, Assistant Warden Jordan, Debbie Rutledge, Major

White, Captain Murphy, and Mr. Coleman as Defendants, but has not alleged that any of these

individuals had the personal involvement required for a claim under § 1983.[20]  In large part, the

only allegations related to these Defendants' involvement is that  they were intended recipients of

various letters sent by Plaintiff and her husband.[21]  Being the intended recipient of a letter is not

enough to demonstrate personal involvement in a constitutional violation.[22]  Plaintiff has also

named James LeBlanc, whose involvement revolves solely around a policy that was implemented

as discussed below.

---

[18] *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).

[19] *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).

[20] Additionally, Plaintiff named Ms. Hutchinson as a Defendant, but Ms. Hutchinson's only involvement with Plaintiff was asking Plaintiff how the prison may remedy the subpoena issue, so Plaintiff could drop the ARP regarding subpoenas.  R. Doc. 1, p. 24.  This lacks real personal involvement, and to the extent it is a complaint regarding the grievance process, such a claim fails as discussed below.

[21] Major White did not have any personal involvement in the alleged constitutional violations.  Rather, White was only copied on a letter regarding the subpoena issue and told Williams to give Plaintiff two hours of visitation with her family, which order Plaintiff alleges was not complied with by a subordinate officer as discussed below.  R. Doc. 1, pp. 5 & 10.  Copying on a letter is insufficient for personal involvement, and Plaintiff's claims related to the visitation issue are prescribed, so even if White was involved personally with respect to these claims, Plaintiff has failed to state a claim.  None of the facts alleged against Murphy indicate any involvement in a constitutional violation. *See* R. Doc. 1, pp. 9-10, 13, 20.  Murphy merely worked in the mailroom and was unable to provide Plaintiff with the information she needed regarding obtaining subpoenas. *Id.*  Plaintiff alleges Mr. Coleman approved a visit for Plaintiff with her family.  R. Doc. 1, p. 4.  Plaintiff's husband sent a letter regarding the various issues noted in this lawsuit to Covington, but Covington was not personally involved and, perhaps, did not even receive the letter or notice of any issues regarding Plaintiff.  The writing of a letter to Covington, who Plaintiff describes as second in command at the Department of Corrections is insufficient to demonstrate personal liability.  Regarding Rutledge, she confirmed that Plaintiff had not received the pertinent subpoenas, but no facts indicate Rutledge participated in any wrongs.  R. Doc. 1, p. 14.  Rather, it appears Rutledge only acted to attempt to solve the subpoena issue.

[22] *See Ramsey v. Spoores*, 185 Fed.Appx. 329, 330 (5th Cir. 2006) ("that Ramsey may have written two letters about his medical treatment to defendant Warden Duke was insufficient to establish the causal connection necessary to show that Duke was personally liable.").

###### ii.    Plaintiff has not Alleged Facts to Support a Deficient Policy

The only policy complained of by Plaintiff is a policy that allegedly required Plaintiff to formally notify officials at LCIW that she was representing herself, so that she would personally receive subpoenas, which would enable her to prepare for court.  This policy was allegedly implemented by officials at the Department of Corrections and LCIW, including James LeBlanc.[23] Plaintiff alleges this policy led to constitutional violations but has failed to allege facts sufficient to demonstrate that the policy itself was so deficient that it was the moving force of a constitutional violations.

Though Plaintiff has alleged implementation of an unconstitutional policy, the facts do not support the conclusion that the policy was so deficient as to be a repudiation of constitutional rights.  Supervisory liability may exist based on a policy only when the policy is so deficient that it is a repudiation of constitutional rights, as when a policy exists the defendant supervisors *know* will "expose prisoners to a substantial risk" of a violation of their federal rights.[24]  Plaintiff's allegations and testimony in the *Spears* hearing reflect that a policy existed that required notification of self-representation to ensure inmate-plaintiffs received notices for court appearances.  Though this system apparently failed in Plaintiff's case, she has presented no facts to indicate that the policy itself is so deficient that supervisors would have been subjectively aware that it would cause a violation of inmates' rights.  Moreover, supervisory liability based on an alleged unconstitutional policy may not be found where the system has only failed in isolated

---

[23] Plaintiff generally alleged in the *Spears* hearing that the policy was implemented by the Department of Corrections and LCIW and stated that the individuals involved in the policy surrounding the subpoena issues included Warden Boutte, James LeBlanc, Deputy Warden LeBlanc Captain John Johnson, Sargent Roberson, and Assistant Warden Jackson; regardless of who implemented the policy, Plaintiff fails to state a claim of constitutional dimension arising from the policy.  Plaintiff also alleged personal involvement, separate from implementation of the policy, of Roberson, Johnson, and Jackson, as discussed below.  Per testimony in the *Spears* hearing, Burkes' only "personal" involvement in the subpoena issue was a refusal to provide Plaintiff with a copy of the policy.
[24] *Thompkins*, 828 F.2d at 304-05.

5

instances and cannot be inferred from isolated wrongful acts.[25] Here, Plaintiff has put forth no facts to indicate that this problem occurred repeatedly or that it would be obvious to officials that the policy would have the likely consequence of a denial of access to the courts.[26]   Accordingly, Plaintiff's assertions of supervisory liability are unfounded and insupportable.[27]   Even if an unconstitutional policy existed and that policy caused Plaintiff not to receive certain subpoenas as she claims, she still cannot state a violation of denial of access to the courts based on that policy because the claim underlying the lawsuit that was allegedly interfered with lacked merit.

### C.  Plaintiff Cannot State a Claim for Denial of Access to the Courts[28]

To the extent Plaintiff alleges that certain Defendants personally interfered with her access to the courts,[29] separately from the issues regarding the subpoena policy discussed above, Plaintiff still fails to state a claim.  Inmates have a fundamental constitutional right of access to the courts.[30]

---

[25] *Id.*

[26] *Good v. Bowles*, 9 F.3d 1547 (5th Cir. 1993) (though the policy in place may have contributed to the plaintiff's prolonged incarceration, the policy itself was not a repudiation of constitutional rights because it was not "obvious" that the likely consequence of the policy would be the deprivation of liberty).

[27] *See Hayward v. Douglas*, No. 07-0072, 2011 WL 13182993, at *5 (M.D. La. Mar. 1, 2011), *report and recommendation adopted*, No. 07-72, 2011 WL 13187295 (M.D. La. Mar. 16, 2011) (refusing to find that the policy complained of was so deficient that the policy itself constituted a repudiation of constitutional rights because, though medical care may have been lacking in certain instances, the episodic breakdowns did not lead to the conclusion that the policy itself was a repudiation of constitutional rights or exposed inmates to a substantial risk of significantly unmet serious medical needs, of which supervisory defendants were subjectively aware).

[28] In both the Complaint and *Spears* hearing, Plaintiff focused on the various actions of Defendants that allegedly impeded her access to the courts, which happened to include instances where her legal mail was not delivered to her. *See, e.g.,* R. Doc. 1, ¶ 7 ("The facility had impeded the plaintiff [sic] Civil Case process through the Subpoena/Pleading process."); ¶ 9 ("[T]his compromised plaintiff [sic] rights to a fair trial and due process."); ¶ 17 ("Plaintiff Nevers was trying to get the judgment annulled, and the facility was impeding Plaintiff [sic] civil case because they did not want to own their mistake."); ¶ 23 ("The facility denied due process through the Subpoena/Petition process" when Plaintiff was denied a copy of subpoenas she wanted to enter into evidence in her Fortieth Judicial District Court case). At no time has Plaintiff alleged facts to indicate that she is pursuing a separate claim under the free speech clause of the First Amendment.  *See Brewer v. Wilkinson*, 3. F3d. 816, 820-825 (5th Cir. 1993) (noting that access to courts claims and free speech claims are distinct, though both claims arise under the First Amendment).  Accordingly, this Report does not explore the viability of any potential free speech claims arising separately from Plaintiff's denial of access to the courts claims.

[29] Between the Complaint and the *Spears* hearing, Plaintiff has alleged that Smith and Roberson threatened her and took her legal work, and John-Johnson and Jackson refused to allow her to take her legal work to court.  R. Doc. 1, p. 6.  She also alleges that Williams threatened to throw her legal work in the trash, and Ashley Miles sent Plaintiff to an inmate who refused to assist Plaintiff with her lawsuits.  R. Doc. 1, pp. 11 & 17.

[30] *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

The right of access to the courts, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."[31]  In order to prevail on a claim of interference with access to the courts, an inmate claimant must be able to show that she has suffered some cognizable legal prejudice or detriment as a result of the defendant's actions.[32]  In addition, the plaintiff must be able to show that the defendant had an intent to interfere with the plaintiff's right to submit pleadings to the courts or was otherwise deliberately indifferent to the plaintiff's wish to do so.[33]  An inmate's right to seek access to the courts is limited to the making of non-frivolous claims involving the assertion of legitimate constitutional rights.[34]  Because the right to access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court,"[35] "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint."[36]

Plaintiff's claim of denial of access to the courts is based upon an action she brought in the Fortieth Judicial District Court, St. John the Baptist Parish in April 2018.[37]  Defendant St. John the Baptist Parish Sheriff Mike Tregre was dismissed from the suit on the basis of prescription,[38] and the Fortieth Judicial District Court also noted that "the entire matter [was] prescribed."[39]  In the

---

[31] *Lewis,* 518 U.S. at 356.

[32] *Eason v. Thaler,* 73 F.3d 1322, 1328 (5th Cir. 1996).

[33] *See Herrington v. Martin,* No. 09-785, 2009 WL 5178340, *2 (W.D. La. Dec. 23, 2009) (recognizing that "[a]n 'access to courts' claim is actionable only if the deprivation stemmed from intentional conduct on the part of the defendant; 'access to courts' claims premised on a defendant's mere negligence or inadvertence are not cognizable under § 1983").

[34] *Johnson v. Rodriguez,* 110 F.3d 299, 311 (5th Cir. 1997).

[35] *Christopher v. Harbury,* 536 U.S. 403, 415 (2002),

[36] *Lewis,* 518 U.S. at 356.

[37] *See* R. Docs. 1, p. 4; & 7-1, pp. 86-153 (documents from the case underlying the denial of access to courts claim).

[38] R. Doc. 7-1, pp. 87-88.

[39] R. Doc. 7-1, p. 89, n.8 (November 18, 2018 Judgment from Fortieth Judicial District Court) ("The Court recognizes that, under other circumstances the sustained declinatory exceptions above could have been remedied by a mere amendment of the petition.  However, since the entire matter is prescribed, an amendment of any defects to the petition would be meaningless.").

*Spears* hearing, Plaintiff confirmed that all actions complained of in the case she brought in the Fortieth Judicial District Court, which was filed in April 2018, occurred prior to November 30, 2016. The suit sounded in tort,[40] for which, the relevant prescriptive period is one year.[41] Accordingly, because the claims being pursued in the Fortieth Judicial District Court were prescribed and thus, not meritorious, Plaintiff cannot state a claim for denial of access to the courts to pursue those claims.[42] Accordingly, all claims regarding interference with access to the courts are subject to dismissal.

### D.  Plaintiff Cannot State a Claim Regarding the Grievance Process

Plaintiff complains generally regarding the grievance process at LCIW,[43] and Kaylin Templet-Dedon is named solely for issues regarding the grievance process.[44] Plaintiff has no right to have her prison grievance proceedings properly investigated, handled, or favorably resolved,[45]

---

[40] Plaintiff confirmed in the *Spears* hearing that the claims underlying her action in the Fortieth Judicial District Court arose from the same events complained of in *Alex v. St John the Baptist Parish Sheriff's Office*, No. 16-17019, 2017 WL 5157538 (E.D. La. Nov. 7, 2017). The claims included conspiracy, malicious acts, retaliation, and other claims properly classified as torts. *Id.* Several claims in that action were dismissed on the basis of prescription. *Id.*; *see generally Shawanda Nevers Alex, et al. v. St John the Baptist Parish Sheriff's Office*, No. 16-17019 (E.D. La.), Orders and Reasons entered February 13, 2017 (R. Doc. 39) (dismissing claims against the United States under the Federal Tort Claims Act for failure to exhaust); April 11, 2017 (R. Doc. 69) (dismissing claims against Governor John Bel Edwards for failure to state a claim upon which relief can be granted); April 19, 2017 (R. Doc. 76 (dismissing claims against the St. John the Baptist Parish District Attorney's Office Defendants for failure to state a claim upon which relief can be granted); April 27, 2017 (R. Doc. 78) (dismissing claims against Louisiana State Police officers on the basis of Eleventh Amendment immunity); June 1, 2017 (R. Doc. 97) (dismissing claim against Deputy Giovingo on the basis of prescription); August 2, 2017 (R. Doc. 136) (dismissing claim against Ret. Judge Mary Hotard Becnel on the basis of absolute judicial immunity); November 7, 2017 (R. Doc. 159) (dismissing claims against St. John the Baptist Parish Sheriff's Office Defendants on the basis of prescription); November 16, 2017 (R. Doc. 160) (dismissing claims against St. Tammany Parish Sheriff's Office Defendants on the basis of prescription); November 21, 2017 (R. Doc. 161) (dismissing claims against Deputy Montana for failure to serve); and November 21, 2017 Judgment (R. Doc. 162) confirming that all federal claims were dismissed with prejudice).

[41] La. C.C. art. 3492.

[42] Plaintiff appears to believe her suit in the Fortieth Judicial District Court was dismissed because she did not receive certain subpoenas. As explained above, that suit could not be maintained because Plaintiff's claims were prescribed. In other words, the outcome of the suit would have been the same even if Plaintiff had received the subpoenas in a timely fashion.

[43] Plaintiff complains that "Headquarters" did not impartially review her grievances, that various Defendants responded to Plaintiff's grievances, and that certain ARPs were dismissed. R. Doc. 1, pp. 6, 22, 23, & 28-30.

[44] To the extent any claim is made against any Defendant regarding the grievance process, all such claims are subject to dismissal as discussed below.

[45] *Mahogany v. Miller,* 252 Fed.Appx. 593, 595 (5th Cir. 2007).

and there is no procedural due process right inherent in such a claim.  As stated by the United

States Court of Appeal for the Fifth Circuit in *Geiger v. Jowers*:[46]

> Insofar as [the plaintiff] seeks relief regarding an alleged violation
> of his due process rights resulting from the prison grievance
> procedures, the district court did not err in dismissing his claim as
> frivolous…[The plaintiff] does not have a federally protected liberty
> interest in having these grievances resolved to his satisfaction.  As
> he relies on legally nonexistent interest, any alleged due process
> violation arising from the alleged failure to investigate his
> grievances is indisputably meritless.[47]

Accordingly, any claim Plaintiff attempts to state arising from the handling of her grievance lacks

merit and should be dismissed.

### E. Plaintiff has Not Stated a Claim Under the Federal Torts Claims Act ("FTCA")

In Plaintiff's Complaint, she purported to make claims under the FTCA, but Plaintiff

clarified in the *Spears* hearing that she is not alleging that any of the named defendants are

employees of the federal government.  The only proper defendant in a FTCA suit is the United

States or an employee of the United States in his or her official capacity.[48]  Accordingly, the claims

purported to be brought under the FTCA are subject to dismissal.

### F. Plaintiff's Visitation Claims & Equal Protection Claims Arising from the Visitation Claims are Prescribed

Plaintiff complains that Williams "cut" Plaintiff's visitation with her daughters in

contravention of an order by Major White on October 20, 2018.[49]  Additionally, Plaintiff complains

---

[46] 404 F.3d 371 (5th Cir. 2005) (in the context of the handling of an administrative grievance).

[47] *Id*. at 373-74.  This conclusion is equally applicable in the context of prison disciplinary proceedings.  *See, e.g., Sanchez v. Grounds,* No. 13-2, 2014 WL 1049164, at *2 (E.D. Tex. Mar. 14, 2014) (finding that an inmate's claim regarding a failure to conduct a "proper investigation" of a disciplinary charge "did not amount to a constitutional deprivation");  and *Jackson v. Mizell,* No. 09-3003, 2009 WL 1792774, at *7 n.11 (E.D. La. June 23, 2009) (noting that "the Court fails to see how a prisoner could ever state a cognizable claim alleging an inadequate disciplinary investigation").

[48] *Reagan v. Burns*, No. 16-2590, 2019 WL 6733023, at *19 (N.D. Tex. Oct. 30, 2019), *report and recommendation adopted,* No. 16-2590, 2019 WL 6729085 (N.D. Tex. Dec. 10, 2019).

[49] R. Docs. 1, p. 5; 7-1, pp. 18-25.

that Morgan Leblanc gave a Caucasian female extra visitation time despite that inmate having already used her visitation time for the month, when Plaintiff was only allowed 30 minutes of visitation time.[50]   Plaintiff submitted a grievance ("ARP") in relation to these complaints on October 21, 2018, but the ARP was rejected due to its length on November 15, 2018.[51]   Plaintiff resubmitted the ARP on November 17, 2018.[52]   The ARP was accepted on December 4, 2018, but Plaintiff does not state when she received a first step response.[53]   She does, however, state she appealed to the second step on January 18, 2019,[54] and documentation indicating a second step response was issued on February 11, 2019.[55]   In the *Spears* hearing, Plaintiff verified that she received a second step response on May 1, 2019.

"There is no federal statute of limitations for actions brought pursuant to 42 U.S.C. § 1983," so the federal courts borrow the limitations period of the forum state.[56]   Actions brought pursuant to § 1983 are considered delictual and, in Louisiana, are subject to a prescriptive period of one year.[57]   State law also governs tolling, unless the state provisions regarding tolling are inconsistent with federal law.[58]   Though the Louisiana prescriptive period of one year applies to Plaintiff's claims, federal law governs when his claims accrued.[59]   Under federal law, a claim generally accrues "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured" and that there is a connection between his injury

---

[50] R. Doc. 1, pp. 5-6.

[51] R. Docs. 1, p. 5; 7, p. 3; 7-1, p. 17.

[52] R. Docs. 7, p. 3; 7-1, pp. 26.

[53] R. Doc. 7, p. 3.

[54] R. Doc. 7, p. 3.

[55] R. Doc. 7-1, p. 28.

[56] *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992). *See also, Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) ("Federal courts borrow state statutes of limitations to govern claims brought under section 1983."); *White v. Gusman*, 347 Fed. Appx. 66, 67 (5th Cir. 2009) (unpublished) ("The prescriptive period for a claim brought under § 1983 is provided by the law of the state in which the claim arose.").

[57] La. C.C. art. 3492; *Clifford v. Gibbs*, 298F.3d 328, 332 (5th Cir. 2002); *Crane v. Childers*, 655 Fed.Appx. 203, 204 (5th Cir. 2016) (§ 1983 claims are subject to the one-year prescriptive period for delictual actions).

[58] *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484 (1980).

[59] *Harris*, 198 F.3d at 157.

and the defendant's actions.[60]  "A plaintiff need not know that she has a legal cause of action; she need know only the facts that would ultimately support a claim."[61]  The incident giving rise to these claims occurred on October 20, 2018.[62]  However, because Plaintiff was required to exhaust administrative remedies prior to filing suit by filing an ARP, prescription is suspended while an ARP is pending because of the statutorily created impediment to filing suit.[63]  This Report does not reach the effect of the rejected ARP on the prescriptive period because, even if the prescriptive period is tolled from the date of the incident, October 20, 2018, through Plaintiff's receipt her second step response on May 1, 2019, these claims are prescribed.  Giving Plaintiff the benefit of this tolling, she had to file a suit regarding these claims by no later than May 2, 2020.  Because her suit was not filed until July 22, 2020,[64] these claims are prescribed and subject to dismissal.

### G.  Plaintiff Has Stated a Claim Regarding the Attack by the "Two-Sister Gang," with Exceptions

Plaintiff asserts a "two-sister" gang ("sisters"), consisting of two other inmates, Patrice and Paulette, placed Plaintiff's life in constant danger and that various Defendants had knowledge that the sisters posed a threat to Plaintiff.[65]  Plaintiff's claim regarding the sisters sounds in a claim for failure to protect.

"Deliberate indifference" is the standard applied in evaluating a failure to protect claim.  This term has been defined as including an element of "subjective recklessness" as used in the criminal law.[66]  An official acts with the requisite deliberate indifference if he is aware of an "excessive risk to inmate ... safety" and disregards that risk.[67]  A prison official may be held liable

---

[60] *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (internal quotation marks and citations omitted).
[61] *Id.*, citing *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).
[62] R. Docs. 1, p. 5; 7-1, pp. 18-25.
[63] La. Civ. Code art. 3467; *Kron v. LeBlanc*, No. 11-2263, 2013 WL 823550, *2 (E.D. La. March 6, 2013).
[64] R. Doc. 1.
[65] R. Docs. 1, pp. 1, 23-24; 7-1, pp. 164, 167.
[66] *Farmer*, 511 U.S. at 837.
[67] *Id.*

under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to avoid it.[68]   In other words, for there to be liability in connection with this cause of action, there must exist an intent on the part of security officers to cause the plaintiff harm or at least a conscious or callous indifference to the plaintiff's right to be protected from such harm.[69]   The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference.[70] Mere negligence or "failure to alleviate a significant risk that [the official] should have perceived but did not" are insufficient to establish a failure to protect claim.[71]   Deliberate indifference requires a level of awareness of a specific risk based upon specific information, such that general knowledge of general dangerousness or the like is not enough to support a failure to protect claim.[72]

The harassment and threats by the sisters began prior to March 17, 2019,[73] but Plaintiff alleges the harassment turned physical on May 5, 2019 when one of the sisters hit Plaintiff with a panel, requiring Plaintiff to seek medical attention.[74]   Plaintiff alleges, and stated in the *Spears* hearing, that Lashawnda Burks, D. Burks,[75] Deputy Warden LeBlanc, Warden Boutte, Colonel Brown, Jackson, and Assistant Warden Pedascleaux knew of the harassment and threats by the

---

[68] *Id.* at 847.
[69] *Johnston*, 786 F.2d at 1259.
[70] *Farmer*, 511 U.S. at 837.
[71] *Id*. at 838.  *See also, Domino v. Texas Dept. of Crim. Jus.*, 239 F.3d 752, 756 (5th Cir. 2001), (citing *Farmer*, 511 U.S. at 838).
[72] *Walker v. Davis*, No. 17-166, 2019 WL 2465298, at *8 (E.D. Tex. Jan. 10, 2019).  *See also Van Williams v. Samaniego*, No. 05-491, 2007 WL 9701460, at *3 (W.D. Tex. Feb. 22, 2007) (citation omitted) ("General knowledge about another inmate's violent tendencies, without more specific information about the risk, does not rise to the requisite level of awareness necessary for a finding of deliberate indifference.").
[73] On March, 17, 2019, Plaintiff filed an ARP against Lashawnda Burks for taking the sisters' side and allowing them to threaten and harass Plaintiff.  R. Doc. 1, pp. 23-24.
[74] R. Doc. 1, p. 26.
[75] Plaintiff clarified in the *Spears* hearing that D. Burks is not a Defendant.

"Two-Sister Gang" prior to the May 5, 2019 attack because Plaintiff had advised them of same.[76] Because, based on Plaintiff's allegations, these Defendants knew of the threat posed by the sisters to Plaintiff, she has stated sufficient facts for a failure to protect claim to survive at this juncture.

> ### i. Plaintiff Cannot State a Claim for Monetary Damages against Defendants in Their Official Capacities

Plaintiff originally filed suit against all Defendants in their official capacities, but she later amended to name Defendants in their individual capacities.[77]  42 U.S.C. § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983.[78] In addition, in *Hafer v. Melo*,[79] the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.[80]  To the extent Plaintiff continues to assert any § 1983 claims against Defendants in their official capacities for monetary damages, those claims are subject to dismissal.[81]

---

[76] Plaintiff filed an ARP against Burks regarding the sisters on March 17, 2019, and the following day, Plaintiff wrote Deputy Warden LeBlanc a letter regarding the bullying; Plaintiff copied Burks, D. Burks, Jackson, Brown, and the Attorney General.  R. Doc. 1, pp. 23-24.  In the *Spears* hearing Plaintiff asserted that Lashawnda Burks, D. Burks,[76] Deputy Warden LeBlanc, Warden Boutte, Colonel Brown, Jackson, and Assistant Warden Pedascleaux personally knew of the harassment.

[77] Leave to amend was granted in the *Spears* hearing.

[78] *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).

[79] 502 U.S. 21 (1991).

[80] *Id*. at 25.

[81] *See Landry v. Lollis*, No. 19-520, 2019 WL 5777755, at *2 (M.D. La. Oct. 8, 2019), *report and recommendation adopted*, No. 19-520, 2019 WL 5777388 (M.D. La. Nov. 5, 2019).

### ii.    Plaintiff Cannot State a Claim Regarding Verbal Harassment from the "Two-Sister Gang" or Defendants

Plaintiff alleged the "Two-Sister Gang" verbally harassed her.  A failure to protect claim does not arise from mere verbal harassment.[82]  Plaintiff's numerous complaints of verbal harassment by Defendants are, likewise, not actionable under § 1983.[83]  Thus, Plaintiff cannot state a claim as a result of the harassment to which she was subjected by the sisters and/or by Defendants, and these claims are subject to dismissal.[84]

### iii.    Plaintiff Cannot State a Claim for Conspiracy or Retaliation

A plaintiff who asserts conspiracy claims under civil rights statutes, such as § 1983, must plead the operative facts upon which their claim is based.[85]  "Bald allegations that a conspiracy existed are insufficient."[86]  Plaintiff argued in the *Spears* hearing that a conspiracy is supported by the fact that actions were not taken to protect her from the "Two-Sister Gang" until after multiple incidents and multiple requests.  Plaintiff alleges that officers did nothing to prevent the harassment and attacks but rather, advised Plaintiff to diffuse the situation.  Plaintiff stated in the *Spears* hearing that officials did not take her seriously with respect to the threats by the "Two-Sister Gang" until she wrote a letter to various supervisors notifying them that she was "not going to fight them back" but was "going to allow them to do what they want to do," and then, she was going to hold the Department of Corrections liable.  Plaintiff argued that the fact that she was not protected from the "Two-Sister Gang" earlier is because there was a conspiracy.

---

[82] *See White v. Underwood,* No. 18-701, 2019 WL 2719353, at *4 (N.D. Tex. May 17, 2019) (citing *Newton v. Black*, 133 F.3d 301, 308-09 (5th Cir. 1998) (affirming dismissal where the prisoner alleged "that the defendants violated his Eighth Amendment rights by failing to protect him from [a] threatened attack")).
[83] *See Orange v. Ellis,* 348 Fed.Appx. 69, 72 (5th Cir. 2009); and *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir. 1983).
[84] Plaintiff's only claim against Major Jenkins arises from alleged verbal harassment and threats.  R. Doc. 1, p. 14.
[85] *Lynch v. Cannatella,* 810 F.2d 1363, 1369-70 (5th Cir. 1987).
[86] *Id.*

The fact that Plaintiff was not protected even when she notified Defendants of the threats is the only fact Plaintiff in support of an alleged conspiracy between the "Two-Sister Gang" and any Defendant. Though the failure to remove Plaintiff or take other measures to prevent an attack on Plaintiff by the "Two-Sister Gang" states a claim for failure to protect, it does not, standing alone, state a claim for conspiracy. Plaintiff has not supported the allegations of conspiracy with any facts demonstrating the existence of an agreement between any Defendant and the sisters to deprive Plaintiff of her constitutional rights.[87] If the simple failure to protect from an attack constituted a conspiracy, every failure to protect claim would also be a claim for conspiracy because a failure to protect claim requires that an official know of a threat to inmate safety and refuse to take measures to abate the threat. Rather, to establish a conspiracy claim under § 1983, Plaintiff must allege not only an actual violation of § 1983 (here, the failure to protect), but she must also allege facts that indicate there was an agreement by the conspirators to commit an illegal act.[88] Plaintiff has not succeeded in alleging facts to indicate any type of agreement, so she has failed to allege a conspiracy.

To state a claim for retaliation, a prisoner must allege the following: (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis,* was undertaken against the prisoner by the defendant, and (4) that there was causation, *i.e.,* that "but for" the retaliatory motive, the adverse action would not have occurred.[89] Plaintiff alleged in the *Spears* hearing that Defendants allowed the sisters to

---

[87] *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1992). To the extent Plaintiff alleges any other Defendant or individual was involved in a conspiracy to "cover up" Juneau's actions (R. Doc. 1, p. 6), those claims fail for the same reasons as the conspiracy claims against LeBlanc and Vannoy fail: the allegations are conclusory, and Plaintiff has provided no facts to support a conspiracy.

[88] *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995).

[89] *Morris v. Powell,* 449 F.3d 682, 684 (5th Cir. 2006). *See also Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger,* 188 F.3d 322, 324–25 (5th Cir. 1999).

attack her because she had filed so many grievances.  Though the filing of grievances is a protected constitutional right, because Plaintiff has failed to demonstrate that a conspiracy existed and because the retaliatory act was an attack by the sisters (not any Defendant), she has failed to demonstrate that there was any intent on the part of any Defendant and has failed to demonstrate causation.  As there is no claim for conspiracy and no facts to indicate any Defendant directed the sisters to do anything to Plaintiff or coordinated any attack, Plaintiff's claim for retaliation based upon the May 5, 2019 attack must fail.

To the extent Plaintiff alleges that the threat by Burks constitutes retaliation, Plaintiff fares no better.  The Fifth Circuit has held that threats alone are insufficient for a § 1983 claim; rather, a § 1983 "claim only accrues when the threats or threatening conduct result in a constitutional deprivation."[90]  "[T]he threat of an adverse action does not in itself support a claim for retaliation."[91]  The ARP regarding the harassment by the "two-sister gang" was allegedly filed on March 17, 2019 and was directed against LaShawnda Burks.[92]  Burks allegedly "paid plaintiff a visit," and Plaintiff felt compelled to drop the ARP regarding the two-sister gang against Burks and did so.[93]  Plaintiff filed another ARP regarding the "two-sister" gang on May 5, 2019, apparently the same date Patrice hit Plaintiff in the bathroom.[94]  The ARP was accepted in July 17, 2019, with a first step response issued August 8, 2019.  A second step response was received on October 21, 2019.[95]

---

[90] *Lamar v. Steele*, 698 F.2d 1286, 1286 (5th Cir. 1983); *see also Lineberry v. U.S.*, 2009 WL 499763, at *17 (E.D. Tex. Feb. 27, 2009) (threats alone made in retaliation do not amount to a constitutional violation if an actual constitutional violation does not result from the threats).
[91] *Gillespie v. Williams*, No. 19-301, 2020 WL 759426, at *6 (W.D. Tex. Feb. 14, 2020).
[92] R. Docs. 1, pp. 23-24; 7-1 pp. 157-159.  In the *Spears* hearing, Plaintiff clarified that D. Burks is not an intended Defendant.
[93] R. Doc. 7-1, p. 36.
[94] R. Doc. 7-1, p. 164.
[95] R. Doc. 7, p. 8.

Here, the words that were uttered by Burks, as alleged by Plaintiff, did not threaten adverse action at all.  Rather, Plaintiff testified in the *Spears* hearing that Burks stated to Plaintiff "it would be in your best interest if you would" withdraw this ARP.  Although Plaintiff argues this was a threat, the statement does not specifically threaten adverse action, and adverse action did not come to pass.  Accordingly, Plaintiff has failed to state a claim for retaliation against Burks based upon her statement to Plaintiff.[96]

### RECOMMENDATION

**IT IS RECOMMENDED** that all Shawanda Nevers's claims be **DISMISSED WITH PREJUDICE** for failure to state a claim and legally frivolous pursuant to 28 U.S.C. §§ 1915(e) and 1915A, except for her claims for monetary damages against Lashawnda Burks, Deputy Warden LeBlanc, Warden Boutte, Colonel Brown, Jackson, and Assistant Warden Pedascleaux in their individual capacities for failure to protect.[97]

Signed in Baton Rouge, Louisiana, on June 15, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[96] This claim would also be subject to dismissal, though without prejudice, as unexhausted because Plaintiff did not exhaust the claim as required by 42 U.S.C. § 1997e, and the statement made by Burks did not render administrative remedies unavailable, so as to excuse the exhaustion requirement.  R. Doc. 7-1, p. 164; *Zebrowski v. U.S. Bureau of Prisons*, No. 11-164, 2013 WL 838009, at *2 (S.D. Miss. Mar. 6, 2013), *aff'd sub nom. Zebrowski v. U.S. Fed. Bureau of Prisons*, 558 Fed.Appx. 355 (5th Cir. 2014) (allegations of threats and bully tactics insufficient to excuse exhaustion requirement).

[97] If this recommendation is adopted, the Court will order service on the appropriate Defendants by the United States Marshals Service as Plaintiff has been granted leave to proceed *in forma pauperis* (R. Doc. 5).  Fed. R. Civ. Proc. 4(c)(3).